UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF MINNESOTA, <br><br> ex rel. <br><br> Ryan Mesaros (Relator), <br><br> Plaintiffs, <br><br> vs. <br><br> Wal-Mart Stores, Inc., and Sam's West, Inc. (d/b/a Sam's Club), <br><br> Defendants. | Court File No. 14-sc-3105 (DSD/LIB) <br><br> **AMENDED FALSE CLAIMS ACT COMPLAINT AND DEMAND FOR A JURY TRIAL** <br><br> **FILED UNDER SEAL AND *IN CAMERA* PURSUANT TO 31 U.S.C. § 3730(b)(2)** <br><br> **DO NOT PLACE IN PRESS BOX DO NOT ENTER ON PACER OR CM/ECF** |

Plaintiff and Relator Ryan Mesaros, through his attorneys, JOHN A. KLASSEN, P.A., 700 Lumber Exchange, 10 South Fifth Street, Minneapolis, Minnesota 55402, and MULLER & MULLER, P.L.L.C., 3109 West 50th Street, Suite 362, Minneapolis, Minnesota 55410, states and alleges as follows:

## NATURE OF CLAIM

1. Ryan Mesaros, Pharm.D. ("Relator") brings this action on behalf of the United States of America and the State of Minnesota against Defendants, Wal-Mart Stores, Inc. and Sam's West, Inc. ("Defendants") for damages and civil penalties arising from Defendants' violations of the United States False Claims Act, 31 U.S.C. §§ 3729 to 3733, and the Minnesota False Claims Act, Minn. Stat. §§ 15C.01 et seq. (hereinafter referred to jointly as the "False Claims Acts").

SCANNED NOV 2 6 2014 U.S. DISTRICT COURT MPLS

2. While transacting business in Minnesota, Defendants have (as described in further detail below) engaged and continued to engage in the following unlawful conduct in violation of the False Claims Acts:

a. Defendants have submitted or caused to be submitted claims to Medicaid for "non-covered" pharmaceutical goods and services for which they are expressly prohibited from seeking reimbursement under State of Minnesota regulations governing Medicaid and Medical Assistance;

b. Defendants continue to submit or cause to be submitted claims to Medicaid for "non-covered" pharmaceutical goods and services for which they are expressly prohibited from seeking reimbursement under State of Minnesota regulations governing Medicaid and Medical Assistance;

c. Defendants have submitted or caused to be submitted claims to Medicaid for "non-covered" services, involving dispensing of pharmaceuticals to patients that resulted in the provision of excessive prescriptions and waste of government monies and resources, and for which they were expressly prohibited from seeking reimbursement under State of Minnesota regulations governing Medicaid and Medical Assistance; and

d. Defendants continue to submit or cause to be submitted claims to Medicaid for "non-covered" services, involving dispensing of pharmaceuticals to patients that result in the provision of excessive prescriptions and waste of government monies and resources, and for which they are expressly prohibited from seeking reimbursement under State of Minnesota regulations governing Medicaid and Medical Assistance.

3. Defendants have knowingly, or with deliberate ignorance and reckless disregard of the truth or falsity of information, undertaken actions to implement,

condone, and continue the submission of these false claims to the United States Government and the State of Minnesota. As required by the federal False Claims Act, 31 U.S.C. § 3730(b)(2), and the Minnesota False Claims Act, Minn. Stat. §§ 15C.01 et seq., Relator has provided to the Attorney General of the United States, the United States Attorney for the District of Minnesota ("AUSA-MN"), and the State of Minnesota Attorney General statements of all material evidence and information related to this Amended Complaint. These disclosure statements were supported by material evidence known to Relator at the time. Because these statements included attorney-client communications and work product of Relator's attorneys, and were submitted to the United States Attorney General, the AUSA-MN, and the State of Minnesota Attorney General in their capacities as potential co-counsel in this litigation, Relator understood and intended these disclosures to be confidential.

4. Prior to filing this Amended Complaint, on or about July 30, 2014, and again on or about November 5, 2014, pursuant to the False Claims Acts, Relator voluntarily provided the AUSA-MN and the State of Minnesota Attorney General documentary and testimonial evidence supporting the claims asserted herein against Defendants. This evidence included work product of Relator's attorneys, and it was submitted to the United States Attorney General, the AUSA-MN and the State of Minnesota Attorney General in their capacities as potential co-counsel in this litigation. The Relator understood and intended these disclosures of evidence to be confidential.

## JURISDICTION AND VENUE

5. This action arises under the federal False Claims Act, 31 U.S.C. §§ 3729 et seq., and the Minnesota False Claims Act, Minn. Stat. §§ 15C.01 et seq. This Court has

3

jurisdiction over this case pursuant to 31 U.S.C. §§ 3732(a) and 3730(b) and because Defendants reside, own property, employ individuals, and transact business in this District. This Court also has jurisdiction pursuant to 28 U.S.C. § 1345 and 28 U.S.C. § 1331. The Court has pendant jurisdiction over the state law claims.

6. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a); the unlawful acts complained of herein took place in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because at all times material and relevant, Defendants resided, owned property, employed individuals, and transacted business in this District.

## PARTIES

7. Relator is an adult male who at all times relevant was a resident of Minnesota and a citizen of the United States and of the State of Minnesota. At all times material, Relator was a licensed pharmacist and an "employee" of Defendant Wal-Mart Stores Inc. Relator was also jointly employed by Defendant Sam's West, Inc. as a pharmacist on at least one occasion. Relator brings this action based on direct, independent, and personal knowledge, except where alleged upon information and belief. Relator is an original source of this information to the United States and State of Minnesota Governments. He has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided this information to the United States and State of Minnesota Governments before filing the original and amended actions under the False Claims Acts.

8. Defendant Wal-Mart Stores, Inc. ("Defendant Wal-Mart"), a foreign corporation with its principal place of business in Bentonville, Arkansas, was at all times

4

material Relator's employer. Defendant Wal-Mart employed him at its retail stores throughout Minnesota, where it provides retail pharmacy services to Medicaid patients and beneficiaries. Medicaid is a public assistance program providing for payment of medical expenses for low-income patients, including payment in whole or in part for pharmaceutical goods and services. Funding for Medicaid is jointly shared by the state and federal governments, including the State of Minnesota.

9. Defendant Sam's West, Inc. ("Defendant Sam's"), d/b/a Sam's Club, is a foreign corporation with its principal place of business in Bentonville, Arkansas, and it is wholly owned and operated by Defendant Wal-Mart. Defendant Sam's employed Relator as a pharmacist on at least one occasion between 2012 and 2014, including on October 5, 2013, at its St. Louis Park, Minnesota pharmacy. Defendant Sam's' retail pharmacy operations are completely linked to and a mirror image of Defendant Wal-Mart's, including staff, programs, policies, systems, practices and procedures. Defendant Sam's operates its retail stores throughout Minnesota, where it provides retail pharmacy services to Medicaid patients and beneficiaries. Medicaid is a public assistance program providing for payment of medical expenses for low-income patients, including payment in whole or in part for pharmaceutical goods and services. Funding for Medicaid is jointly shared by the state and federal governments, including the State of Minnesota.

## THE FALSE CLAIMS ACTS

10. The United States False Claims Act provides, in pertinent part that:

(a) Any person who (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; ... or (7) knowingly

> makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government,
>
> \*\*\*
>
> is liable to the United States Government for a civil penalty of not less than $5,500 and not more than $11,000, plus 3 times the amount of damages which the Government sustains because of the act of that person....

For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required. 31 U.S.C. § 3729.

    11. Similarly, the Minnesota False Claims Act, provides, in pertinent part that:

> (a) A person who commits any act described in clauses (1) to (7) is liable to the state or the political subdivision for a civil penalty of not less than $5,500 and not more than $11,000 per false or fraudulent claim, plus three times the amount of damages that the state or the political subdivision sustains because of the act of that person, except as otherwise provided in paragraph (b): (1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (2) knowingly makes or uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; (3) knowingly conspires to commit a violation of clause (1), (2), (4), (5), (6), or (7); (7) knowingly makes or uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state or a political subdivision, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the state or a political subdivision.

For purposes of this section of the Minnesota False Claims Act, the terms "knowing" and "knowingly" mean that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information. No proof of

specific intent to defraud is required, but in no case is a person who acts merely negligently, inadvertently, or mistakenly with respect to information deemed to have acted knowingly. Minn. Stat. §§ 15C.01 et seq.

## FACTS

12. Because they are Medicaid providers, Defendants must comply with all state and federal Medicaid requirements, including those relating to medical necessity for treatment, standards of medical care, and the provision of prescription medications and reimbursement of the same.

13. As Medicaid providers in Minnesota, Defendants must comply with the rules set forth in the Minnesota Health Care Programs' "<u>MHCP Provider Manual – Pharmacy Services</u>", which rules expressly prohibit Defendants from automatically refilling prescriptions for Medicaid patients and beneficiaries or seeking reimbursement for automatically refilled prescriptions for Medicaid patients and beneficiaries.

14. The regulation, which became effective May 24, 2013, defines automatically refilled prescriptions as "non-covered" services and reads: "<u>MHCP does not allow automatic refills. Prescription refills are not eligible for payment without an explicit request from a recipient or authorized caregiver. The pharmacy provider may not contact the recipient in an effort to initiate a refill unless it is part of a good faith effort to assess the recipient's medication regimen.</u>"

15. Relator was employed by Defendants from approximately June 2012 through May 2014. During this period, he worked at approximately 24 different pharmacy locations of Defendant Wal-Mart in Minnesota including, without limitation, Coon Rapids, Eagan, Redwood Falls, Oak Park Heights, Eden Prairie, Rochester,

7

Buffalo, Blue Earth, Hastings, Owatonna, Waseca, Mankato, Faribault, Fridley, Vadnais Heights, Bloomington, Albert Lea, New Ulm, Rochester, Saint Louis Park, Inver Grove Heights, Apple Valley, Lakeville and Burnsville. During this period, Relator was assigned to work on at least one occasion at a pharmacy run by Defendant Sam's, in the State of Minnesota, including on or about October 5, 2013 at its St. Louis Park, Minnesota pharmacy.

16. Relator observed and has presented to the United States Government and the State of Minnesota credible evidence that Defendants have engaged in the submission of fraudulent and false claims for reimbursement to Medicaid for "non-covered" services at each of Defendants' approximately 25 pharmacies where he worked. These fraudulent and false claims practices of Defendants date back to and beyond May 24, 2013, and they continue through the present date. Upon information and belief, Defendants have engaged in the same submission of fraudulent and false claims for reimbursement to Medicaid at every pharmacy they own and operate in the State of Minnesota, which totals approximately 69 Wal-Mart pharmacies and 13 Sam's Club pharmacies.

### Automatic Refill of Medicaid Patient Prescriptions and Submission of Claims for Payment of "Non-Covered" Services

17. Subsequent to May 24, 2013, in direct conflict with the State of Minnesota's prohibition against automatically refilling prescriptions of Medicaid patients, Defendants knowingly automatically refilled prescriptions of Medicaid patients and submitted claims for reimbursement for these "non-covered" services, knowing that Minnesota's rules for payment precluded the submissions of claims for such "non-covered" services.

8

18. Defendants use the same computer-based pharmacy staff, programs, policies, systems, practices and procedures. Their staff and systems are interchangeable and identical. This includes automatically refilling Medicaid prescriptions and billing Medicaid for these "non-covered" prescriptions.

19. In Minnesota, Defendants continue to automatically refill prescriptions of Medicaid patients and to seek and receive payment of these "non-covered" services through the present date, despite the State's clear prohibition against such practices. Relator has personal knowledge of specific examples of Defendants automatically refilling the prescriptions of Medicaid patients and billing Medicaid for these "non-covered" prescriptions between May 24, 2013 and the present date. These instances include, by way of example only and without limitation, the following:

a. On or about October 14, 2013, Prescription No. 6868797 was automatically refilled at Defendant Wal-Mart's Apple Valley, Minnesota pharmacy. This was for a Minnesota Medicaid patient and Defendant Wal-Mart billed Minnesota Medicaid for this prescription even though it knew it was billing for a "non-covered" service. The cost of this prescription was $800 per refill, and it was automatically refilled at least twice by Defendant Wal-Mart. Similarly, on or about October 14, 2013 at that same pharmacy, Defendant Wal-Mart automatically refilled Prescription Nos. 6858388 (10x$355/refill), 6867697 (2x$50/refill), 6850546 (2x$163/refill), 6856961 (7x$235/refill) and 4429631 (3x$522/refill). Defendant Wal-Mart automatically refilled these prescriptions for Minnesota Medicaid patients (in whole or in part after May 24, 2013), and then Defendant Wal-Mart fraudulently billed for these "non-covered" services, and received payment from Minnesota Medicaid in violation of the law.

b. Other examples of Defendant Wal-Mart automatically refilling Minnesota Medicaid patients' prescriptions and billing Minnesota Medicaid for these "non-covered" services occurred at various of Defendant Wal-Mart's pharmacies, including the following: on or about October 20, 2013 at the Faribault pharmacy, Prescription Nos. 7018604, 7054222, 8827174, and 7054225; on or about November 7, 2013 at the New Ulm pharmacy, Prescription No. 6687862, which prescription contained a computer profile comment, "Always mail," and this Minnesota Medicaid patient's entire prescription profile was set on automatic refill in Defendant Wal-Mart's computer system; and, on or about November 16, 2013 at the Bloomington pharmacy, Prescription No. 8821137 was set on automatic refill for a Minnesota Medicaid patient. In each instance, Defendant Wal-Mart automatically refilled these prescriptions for Minnesota Medicaid patients, fraudulently billed for these "non-covered" services, and received payment from Minnesota Medicaid in violation of the law.

c. Examples of Defendant Wal-Mart fraudulently billing Managed Care Organization ("MCO")-managed Medicaid patients for automatically refilled prescriptions include the following, without limitation: On or about October 20, 2013, at the Faribault pharmacy, Defendant Wal-Mart automatically refilled Prescription No. 8809712 and billed GNT, an MCO for Medicaid patients, for these "non-covered" services; similarly, on or about November 16, 2013, Defendant Wal-Mart automatically refilled Prescription Nos. 6960004 and 6969686 and billed ESI, an MCO for Medicaid patients, for these "non-covered" services. In each instance, Defendant Wal-Mart automatically refilled prescriptions for MCO-managed Medicaid patients, fraudulently

billed for these "non-covered" services, and received payment by Medicaid in violation of the law.

        d.      On or about October 5, 2013, while working at Defendant Sam's St. Louis Park pharmacy, Relator learned that Defendants use the same computer-based pharmacy staff, programs, policies, systems, practices and procedures. Their staff and systems are interchangeable and identical. This includes automatically refilling Medicaid prescriptions and billing Medicaid for these "non-covered" prescriptions. On that date, Relator witnessed the same fraudulent and unlawful conduct occurring at Defendant Sam's. Relator subsequently learned from other pharmacy employees of Defendant Sam's that these practices continue to the present date.

        e.      Relator personally witnessed Defendants engage in the unlawful automatic refilling of Medicaid patients' prescriptions, and subsequent unlawful billing to Medicaid for "non-covered" services, at each of Defendants' pharmacies where he worked.

**Systematic Telephone Solicitation of Medicaid Patients to Refill Prescriptions and Submission of Claims for Payment of "Non-Covered" Services**

        20.      In addition to prohibiting Defendants from automatically refilling prescriptions of Medicaid Patients, Minnesota regulations likewise prohibit Defendants from contacting Medicaid recipients "in an effort to initiate a refill unless it is part of a good faith effort to assess the recipient's medication regimen." Despite being aware of this prohibition, Defendants have knowingly solicited refill orders from Medicaid patients, refilled the prescriptions it solicited, and submitted claims for payment of these "non-covered" services to Medicaid, all the while knowing that Minnesota's rules for payment precluded the submission of such claims.

21. On a daily basis, Defendants directed its pharmacy technicians to solicit a list of patients by telephone for refills of their prescriptions. These patients included Minnesota Medicaid patients as well as MCO-Managed patients who were Medicaid recipients. Relator personally witnessed Defendants engaging in the unlawful solicitation of Medicaid patients for refills, and subsequent unlawful billing to Medicaid for "non-covered" services, at each of Defendants' pharmacies where he worked. The sole purpose of these solicitations was to increase the volume of refilled prescriptions for Medicaid patients; it was not part of an effort to "assess the recipient's medication regimen." In fact, some pharmacies of Defendants specifically targeted Medicaid recipients with solicitations for refills of prescriptions drugs because they were "easy targets" for refills (usually having a co-pay of $1.00 or less).

22. Relator has personal knowledge of specific examples of Defendants soliciting Medicaid Patients to refill prescriptions, refilling these prescriptions, and billing Medicaid for these "non-covered" prescriptions between May 24, 2013 and the present date. These instances include, by way of example only and without limitation, the following: In 2013, at Defendant Wal-Mart's pharmacy in Lakeville, Minnesota, an employee of Defendant Wal-Mart, at the order of Defendant Wal-Mart, systematically solicited Medicaid patients to refill their prescriptions. One of the Medicaid patients solicited by Defendant Wal-Mart to refill a single prescription, Prescription No. 6606909, agreed to refill that prescription and five others. Defendant Wal-Mart refilled all these prescriptions that it initiated through its unlawful solicitation. Then, it billed Medicaid for these "non-covered" services and received payment knowing that Minnesota's rules precluded Defendant Wal-Mart from submitting claims for payment of such "non-

covered" services. Defendant Wal-Mart engaged in the same conduct with MCO-managed Medicaid beneficiaries.

23. The above-described fraudulent solicitation, automatic refilling, dispensing, and billing practices of Defendant Wal-Mart occurred at each and every one of Defendants' Minnesota pharmacies at which Relator worked. He also observed firsthand the same practices at Defendant Sam's and that they continue to the present date. These practices have resulted in Defendants selling, dispensing, and receiving payment from Medicaid for "non-covered" services; namely, prescription medications that were not specifically requested by Medicaid recipients or their treating providers. These practices have also resulted in Defendants failing to provide the adequate health care and pharmaceutical services to Medicaid patients in Minnesota. Upon information and belief, these unlawful practices of Defendants occurred, and are still occurring, in every retail pharmacy of Defendants in Minnesota (approximately 82 in all).

24. During his employment with Defendants, Relator reported to his supervisors that he had observed and believed Defendants to be illegally, automatically refilling prescriptions of Medicaid patients and illegally soliciting Medicaid patients by telephone to refill their prescriptions. Relator made these reports on dates that included without limitation, on or about November 2013 and February 11, 2014. Defendants ignored Relator's reports outlining their illegal practices and related submissions of false claims.

25. The actions of Defendants described above have resulted in the knowing submission of false claims to the United States Government and the State of Minnesota.

26. As a direct and proximate result of Defendants' false claims to Medicaid, and other actions taken in violation of the False Claims Acts, the United States Government and the State of Minnesota have been damaged.

## COUNT ONE
## UNITED STATES FALSE CLAIMS ACT VIOLATIONS
## 31 U.S.C. § 3729(a)(1) and (a)(2)

27. Relator re-alleges the foregoing paragraphs as though fully set forth herein.

28. Defendants, by and through their officers, agents, supervisors, owners, directors and employees, knowingly presented or caused to be presented to the United States Government and the State of Minnesota false claims for payment of services and medications under Medicaid, in violation of 31 U.S.C. § 3729(a)(1).

29. Defendants, by and through their officers, agents, supervisors, owners, directors and employees, knowingly made, used, or caused to be made or used, false records or statements to get false claims paid or approved by the United States Government and the State of Minnesota, for payment of services and medications under Medicaid, in violation of 31 U.S.C. § 3729(a)(2).

30. Defendants, by and through their officers, agents, supervisors, owners, directors and employees, authorized the various officers, agents, supervisors, and employees of Defendants to take the unlawful actions set forth above and below.

31. Defendants knowingly hid and otherwise failed to disclose to the United States, the HHS, State of Minnesota and other Federal and State agencies that Defendants have been submitting false claims for payment of services and medications under Medicaid.

32. Defendants falsely represented to the United States Government and the State of Minnesota that the billings Defendants submitted for payment of services and medications under Medicaid were proper, for "covered services," and valid. This resulted in the submission of false claims for "non-covered" services to the United States Government and the State of Minnesota, and the payment to Defendants for "non-covered" services by the United States Government and the State of Minnesota.

33. Defendants' course of conduct violated the United States False Claims Act, 31 U.S.C. §§ 3729 et seq.

34. The United States and the State of Minnesota have been damaged as a result of Defendants' violations of the United States False Claims Act to the extent that the United States and the State of Minnesota, unaware of the falsity of the claims and/or statements of Defendants, and in reliance on the accuracy thereof, made payments for which Defendants were not entitled.

### COUNT TWO
### MINNESOTA FALSE CLAIMS ACT VIOLATIONS
### MINN. STAT. §§ 15C.01 et seq.

35. Relator re-alleges the foregoing paragraphs as though fully set forth herein.

36. Defendants, by and through their officers, agents, supervisors, owners, directors and employees, knowingly presented or caused to be presented to the United States Government and the State of Minnesota false claims for payment of services and medications under Medicaid, in violation of Minn. Stat. §§ 15C.01 et seq.

37. Defendants, by and through their officers, agents, supervisors, owners, directors and employees, knowingly made, used, or caused to be made or used, false

records or statements to get false claims paid or approved by the United States Government and the State of Minnesota, for payment of services and medications under Medicaid, in violation of Minn. Stat. §§ 15C.01 et seq.

38. Defendants, by and through their officers, agents, supervisors, owners, directors and employees, authorized the various officers, agents, supervisors, and employees of Defendants to take the unlawful actions set forth above and below.

39. Defendants knowingly hid and otherwise failed to disclose to the United States, the HHS, State of Minnesota and other Federal and State agencies that Defendants have been submitting false claims for payment of services and medications under Medicaid.

40. Defendants falsely represented to the United States Government and the State of Minnesota that the billings Defendants submitted for payment of services and medications under Medicaid were proper, for "covered services," and valid. This resulted in the submission of false claims for "non-covered" services to the United States Government and the State of Minnesota, and the payment to Defendants for "non-covered" services by the United States Government and the State of Minnesota.

41. Defendants' course of conduct violated the Minnesota False Claims Act, Minn. Stat. §§ 15C.01 et seq.

42. The United States and the State of Minnesota have been damaged as a result of Defendants' violations of the Minnesota False Claims Act to the extent that the United States and the State of Minnesota, unaware of the falsity of the claims and/or statements of Defendants, and in reliance on the accuracy thereof, made payments for which Defendants were not entitled.

## PRAYER FOR RELIEF

**WHEREFORE**, Relator, on behalf of himself and the United States Government and the State of Minnesota, respectfully prays:

A.  That this Court enter judgment against the above-named Defendants in an amount equal to three times the amount of damages the United States Government and the State of Minnesota have sustained because of Defendants' actions;

B.  That this Court impose on Defendants a civil penalty of $5,500 to $11,000 for each action in violation of 31 U.S.C. §§ 3729 et seq. and Minn. Stat. §§ 15C.01 et seq.;

C.  That this Court order Defendants to pay the costs of this litigation, with interest, incurred by both the Relator, the United States Government, and the State of Minnesota;

D.  That the Relator be awarded all costs incurred, including reasonable attorneys' fees;

E.  That, in the event the United States Government and/or the State of Minnesota continue to proceed with this action, the Relator be awarded an amount for bringing this action of at least 15% but not more than 25% of the proceeds of the action or settlement of the claim;

F.  That, in the event the United States Government and/or the State of Minnesota does not proceed with this action, the Relator be awarded an amount that the Court decides is reasonable for collecting the civil penalty and damages, which shall be not less than 25% nor more than 30% of the proceeds of the action or settlement of the claim;

G. That the United States Government, the State of Minnesota and the Relator be awarded prejudgment interest; and

H. That the United States Government, the State of Minnesota and the Relator receive all relief, both in law and in equity, to which they may reasonably appear entitled.

## JURY DEMAND

Relator, on behalf of himself, the United States Government and the State of Minnesota, hereby demands a trial by jury of all issues triable of right by a jury.

Date: November 25, 2014

**JOHN A. KLASSEN, PA**

*/s/ John A. Klassen*

John A. Klassen (No. 24434X)
700 Lumber Exchange Building
10 South Fifth Street
Minneapolis, MN 55402
(612) 204-4533
john@jaklaw.com

**MULLER & MULLER, PLLC**
Andrew P. Muller (No. 32467X)
3109 West 50th Street, No. 362
Minneapolis, MN 55410-2102
(612) 604-5341
apmuller@themullerlawfirm.com

**ATTORNEYS FOR PLAINTIFF AND RELATOR RYAN MESAROS**